

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the order of the Court.**

Signed December 13, 2005

**United States Bankruptcy Judge**

___

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| In Re: § | | |
| § | | |
| MARVIN DEAN HENNINGER AND § | CASE NO. 04-11038-RLJ-7 | |
| JUANITA SUE HENNINGER, § | | |
| § | | |
| Debtors § | | |

| | | |
|---|---|---|
| HARVEY L. MORTON, TRUSTEE, § | | |
| § | | |
| Plaintiff § | | |
| § | | |
| VS. § | ADVERSARY NO. 05-1002 | |
| § | | |
| COMMERCIAL LOAN SERVICES, INC., § | | |
| DIVERSIFIED FINANCIAL SYSTEMS, § | | |
| INC., § | | |
| § | | |
| Defendant § | | |

## MEMORANDUM OPINION

Harvey L. Morton ("Morton"), trustee in the bankruptcy proceeding of Marvin Dean

Henninger and Juanita Sue Henninger and plaintiff in this adversary proceeding, seeks judgment

against defendant Commercial Loan Services, Inc. ("CLS"), successor to defendant Diversified

Financial Systems, Inc. on the theory that a payment of $20,000 made by the Henningers to CLS is an avoidable preference under section 547 of the Bankruptcy Code.

The Court has jurisdiction over this matter under 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  This Memorandum Opinion contains the Court's findings of fact and conclusions of law.  Bankruptcy Rule 7052.

## Statement of Facts

Dean Henninger ("Henninger"), along with Danny Brown and Roseann Brown, negotiated a settlement agreement with CLS proposing a payment of $20,000 in exchange for a release of claim under four promissory notes with debt allegedly exceeding $300,000.  The four notes were subject of a state court suit filed by Diversified Financial Systems, Inc., predecessor holder of the notes, against Henninger and the Browns in the 42nd District Court of Taylor County, Texas (the "State Court Suit").  Henninger issued a $20,000 personal check, dated May 14, 2004, to his attorney Dick Harris, who deposited the funds in his trust account pending final execution of the settlement.  The settlement was therefore funded entirely by the Henningers.  The parties agree that the Henningers raised the settlement funds from a home equity loan.  There is no evidence, however, of the date or the terms of such home equity loan. The settlement is represented by the Settlement Agreement and Release (the "Settlement Agreement"), which is dated "May ___, 2004."

A series of awkwardly timed events occurred in connection with the parties' signing of the Settlement Agreement.  Henninger and the Browns signed the Settlement Agreement on August 10, 2004.  Immediately after signing the Settlement Agreement, on the same date, Henninger changed his mind regarding the settlement.  Despite this, approximately a week later, an order

dismissing the State Court Suit was forwarded to and entered by the 42nd District Court in Taylor County. CLS signed the Settlement Agreement on August 19, 2004. As the dismissal of the State Court Suit was premised upon the parties' agreement under the Settlement Agreement, the parties then agreed, through counsel, to an order either granting a new trial or setting aside the order dismissing the case.[1] Harris testified that on September 24, 2004, his client, Henninger, again changed his mind thereby agreeing to the settlement. Harris then issued his check dated September 24, 2004 for the full $20,000. Consummation of the settlement was further delayed for logistical reasons; Harris's check was not honored and paid until October 27, 2004. Henninger and his wife Sue then filed bankruptcy on December 8, 2004. Morton was appointed as case trustee in the Henningers' chapter 7 case.

## Discussion

Morton initiated this adversary proceeding to recover the $20,000 as an avoidable preference. CLS contends the $20,000 payment is not a preference under the earmarking doctrine or, alternatively, because the funds were effectively transferred on May 14, 2004, or August 19, 2004, outside the ninety day preference period, on the theory that the Henningers had only a legal interest in the funds once the funds were deposited in Dick Harris's trust account.

Section 547(b) of the Bankruptcy Code sets forth the elements of avoidable preference as follows:

> (b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property–

---

[1] The evidence is somewhat confusing in this respect. The testimony by Dick Harris was that he and opposing counsel agreed to a motion for new trial and also an order setting aside the prior order dismissing the case. In either event, it is obvious that counsel were cooperating with one another on what had become a somewhat difficult situation in light of Henninger's conduct.

>(1) to or for the benefit of a creditor;
>(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>(3) made while the debtor was insolvent;
>(4) made–
>>(A) on or within 90 days before the date of the filing of the petition; or
>>(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
>(5) that enables such creditor to receive more than such creditor would receive if–
>>(A) the case were a case under chapter 7 of this title;
>>(B) the transfer had not been made; and
>>(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

Morton, as trustee, seeks to recover $20,000 as an alleged preference payment flowing from the Henningers, the debtors, to CLS. No claim is made that CLS is an insider. The critical issue, therefore, is whether the "transfer" occurred within ninety days of December 8, 2004, the date of the Henningers' bankruptcy filing. The potential dates for the transfer are (1) May 14, 2004, the date the Henningers issued their $20,000 check to Dick Harris, their attorney; (2) August 10, 2004, the date the Henningers signed the Settlement Agreement and Release; (3) August 19, 2004, the date CLS signed the Settlement Agreement and Release; (4) September 24, 2004, the date Dick Harris issued a $20,000 check payable to CLS; or (5) October 27, 2004, the date Harris's check was honored and paid for the benefit of CLS. A "transfer" on either of the latter two dates falls within the ninety day preference period.

The facts reflect that, as of May 2004, a settlement was being seriously discussed. The Henningers set aside funds for the settlement by depositing the funds in their attorney's trust account. The settlement agreement was not finalized and effective, however, until, at the earliest,

mid-August 2004, when the parties signed the Settlement Agreement and Release.[2] Further delays occasioned the confirmation of the settlement. Dick Harris issued a check from his trust account on September 24, 2004, but such check was not paid to CLS until October 27, 2004. From these relatively simple facts, the Court cannot infer a payment date, *i.e.* a transfer date, earlier than October 27, 2004. Though Henninger's conduct regarding the settlement is questionable, no evidence was offered indicating that the Henningers relinquished control of the settlement funds up until the time of actual payment to CLS. Harris did not have the freedom to issue a check out of his trust account to fund the settlement without the Henningers' explicit consent. At any time prior to the payment, the Henningers could have ordered Harris to return the funds to them. The Fifth Circuit has held that a law firm holding client settlement funds in its trust account rather than its operating account is not an "initial transferee" and thus such funds are not recoverable under a preference theory. *Matter of Coutee*, 984 F.2d 138, 141 (5th Cir. 1993). Harris was not free to pay over the funds at any time after his receipt of the May 14, 2004, check. Harris held the funds in a fiduciary capacity for the Henningers. *Id*. Finally, given the transfer here is payment by check, the effective date of transfer is the date the check was honored. *See Barnhill v. Johnson*, 503 U.S. 393, 401 (1992). In *Barnhill*, the Supreme Court said:

> [O]ur conclusion that no transfer of property occurs until the time of honor is consistent with § 547(e)(2)(A). That section provides that a transfer occurs at the time the transfer 'takes effect between the transferor and the transferee . . .' [B]ecause the debtor . . . retained the ability to stop payment on the check until the very last, we do not think that the transfer of funds . . . can be said to have 'taken effect between the debtor and petitioner' until the moment of honor.

---

[2] The Court is of the opinion that the parties were bound by the Settlement Agreement and Release no later than August 19, 2004, the date CLS's representative signed the agreement. Though Henninger was vacillating regarding the settlement, he did sign it on August 10, 2004, and obviously failed to apprise CLS that he was reneging on the settlement the same day. As noted, the parties proceeded to dismiss the State Court Suit a week later in reliance on the settlement.

*Id*. In the present case, the Henningers had the right to direct Harris to stop payment on his check until the moment of honor. A transfer occurred on October 27, 2004, well within the ninety-day preference period.

The payment was clearly made on account of an antecedent debt. The debt arose under the promissory notes referred to in the Settlement Agreement. CLS's claim existed long before the parties entered into the Settlement Agreement. CLS's claim is coextensive with Henninger's debt. *Matter of Southmark Corp*, 88 F.3d 311, 317 (5th Cir. 1996). The debt is therefore not brought forward in time to the date of the Settlement Agreement and Release. *Id.* Besides, the payment of the funds, and hence the transfer, occurred approximately sixty days after the execution of the Settlement Agreement. As the transfer occurred within ninety days of their bankruptcy filing, the Henningers are presumed insolvent at the time of the transfer. 11 U.S.C. § 547(f). In addition, Harris testified that the Henningers were insolvent during the ninety days prior to their bankruptcy filing. The final element of a preference – that the payment allows the creditor to recover more than such creditor would receive in a chapter 7 if the payment had not been made – is satisfied given there is no evidence this case will result in a 100% dividend to creditors. The Agreed Pre-Trial Order does not designate this latter element as an issue in dispute.

CLS contends that the so-called "earmarking doctrine" provides that the settlement funds were earmarked or set aside thereby eliminating these from being attacked as preferential. The earmarking doctrine is not applicable, however. The earmarking doctrine requires that a new lender has made a loan for the specific purpose of enabling the debtor to pay the antecedent debt.

*Coral Petroleum, Inc. v. Banque Paribas-London*, 797 F.2d 1351 (5th Cir. 1986). It must be clear that the funds are indeed "earmarked." *Id*. The basic rationale is that the loaned funds were never in the debtor's control, in effect substituting one creditor for another. *Id*. Another court has required there be a showing of an agreement between the new lender and the debtor that the newly loaned funds are being used to pay the antecedent debt. *In re Grabill Corp.*, 135 B.R. 101 (N.D. Ill. 1991). In this case, there is evidence that the Henningers obtained a home equity loan to raise the necessary funds for the settlement. However, there is no evidence of an agreement between the home-equity lender and the Henningers regarding the use of the loan proceeds. There is no evidence that the Henningers lost control over the settlement funds at anytime prior to payment by Harris's check. The identity of the lender, the date of the home-equity loan, its terms, etc. are unknown. Under such facts, the earmarking doctrine does not apply.

      CLS concedes the property transferred, the settlement funds, was transferred to or for the benefit of a creditor. Both as to this element and the requirement that the payment be made on account of an antecedent debt, CLS points out that the settlement was for the debt of three individuals, not just Henninger. To the extent CLS is arguing these elements are not satisfied because there is no allocation of the satisfied antecedent debt as between Henninger and the Browns, the Court disagrees. The notes that give rise to the indebtedness that is the subject of the settlement were, according to the Settlement Agreement, all signed by Henninger. The payment was made from Henninger's funds, not the Browns, and was used to resolve a debt owed by Henninger, though perhaps jointly owed, at least in part, by the Browns.

      CLS next argues that the settlement funds were not property of the bankruptcy estate. This is not relevant to the inquiry here. Section 547(b) refers to transfer of funds of the debtor,

specifically referring to pre-petition property. Likewise not relevant is CLS's argument that, since it had a non-culpable mental state, the preference claim should fail. CLS refers to section 542(c)(2), which is the ordinary course of business defense, in asserting this *mens rea* excuse or defense. No evidence or argument was made at trial to support such a theory.

CLS argues that Dick Harris was holding the funds in escrow thereby removing the funds from Henninger's control and thus causing title to the funds to pass to CLS as the ultimate grantee under the escrow agreement. This is simply another attempt by CLS to characterize the funds as not being funds of Henninger. Harris held the funds as the attorney for the Henningers. He was not holding the funds in escrow for the benefit of CLS and was not a fiduciary to CLS.

Finally, CLS in its answer claims common law fraud, wire fraud, and money laundering. None of these claims are subject of the Pre-Trial Order and were not raised at trial.

Morton has satisfied the elements of a preference under section 547(b) of the Bankruptcy Code. Judgment will accordingly be entered in favor of Morton and against CLS in the sum of $20,000.

### End of Memorandum Opinion ###